

Andrea K. George
10 North Post Street, Suite 700
Spokane, Washington 99201
509.624.7606
Attorney for Margaret Joyce Zepeda-Peone

# United States District Court
## Eastern district of Washington

| United States, | No. 2:20-CR-065-TOR |
|---|---|
| Plaintiff, | |
| v. | Sentencing Memorandum |
| Margaret Joyce Zepeda-Peone, | |
| Defendant. | |

# I. Introduction

By all accounts, Margaret Zepeda-Peone was in a psychotic breakdown when setting fire to her home – caused by a combination of childhood trauma, adult trauma, grief over her husband's death, methamphetamine use and delusional thought disorder. The 11(c)(1)(C) plea agreement reflects her diminished state at the time of the fire.

Ms. Zepeda-Peone and the Government seek an 18-month term of imprisonment.

# II. Discussion

On November 10, 2020, Ms. Zepeda-Peone pled guilty to arson in Indian Country with an 11(c)(1)(C) plea agreement range of 12 to 24 months. She has been in federal pretrial custody at the Spokane County Jail since May 13, 2020, nearly one year. Following release, she will seek to enter People's Place[1] to participate in a six to twelve month, co-occurring, culturally sensitive treatment facility.

---

[1] Ms. Zepeda-Peone was previously accepted into this program. It is believed, assuming available bed space, that she will be able to enter this program upon or soon after her release.

Sentencing Memorandum
– 1 –

**A. Ms. Zepeda-Peone was in a psychotic breakdown when setting fire to her home.**

**1. She experienced severe childhood trauma**

Ms. Zepeda-Peone was born in Montana. Her father left the family shortly after she was born. Her father "went out to get a job and never came back." Soon thereafter, her mother married Francis Sherman. Ms. Zepeda-Peone was six. He began sexually molesting her. Despite her young age, she had the wherewithal to report the molestation to her mother. Rather than get help, her mom woke her up in the middle of the night and drove her to Montana. Her mom left Ms. Zepeda-Peone with her grandparents and uncle, for the next three years. This exile turned out to be "the only days of her childhood." Three happy, nurturing years.

Her childhood ended when she was nine. Her mother returned and took her back to the Reservation. By this time, her mother had remarried, Paul Corral. In a psychological evaluation, Ms. Zepeda-Peone described him as "cruel, to put it lightly." He was often controlling, physically aggressive and mentally abusive. He had no difficulty beating Ms. Zepeda-Peone's mother in from of her. He had no difficulty beating Ms. Zepeda-Peone. He made her life a "living hell."

By 10, he was sexually abusing her on a regular and prolong basis – from the age of 10 to 20 years old. At 16, he impregnated her. Her mother reported that the

sexual "relationship" between her daughter and Corral was consensual. But when Ms. Zepeda-Peone later confronted her mother about allowing the molestation to happen, her mother told her to "get over it; it happened to me too."

Ms. Zepeda-Peone described that she "never really got to be a kid" because she was not allowed to have friends outside of school, and she was severely restricted in activities. She was "basically locked in the house." Her mother was often physically abusive, regularly administering discipline – "she'd smack me back to puberty."

Ms. Zepeda-Peone has never received psychological treatment as an adult, and extremely limited treatment as a child, to help her recover from this childhood trauma.

### 2. Despite the domestic abuse, Ms. Zepeda-Peone deeply grieved her husband's death.

Ms. Zepeda-Peone married her husband Raymond when she was 29 years old. They were together for the next eight years and three children, until his 2018 death in a car accident.

During the initial days of their marriage, Ms. Zepeda-Peone held a job working for the Tribe. But in 2015, after years of alcohol-fueled abuse, she became

overwhelmed with stress and marital strain and quit her job. Problems worsened for her substance abuse and depression.

She described her relationship with Raymond as turbulent such that she cared deeply for him but experienced frequent domestic violence. Medical records note a reported domestic violence event in 2015 in which Ms. Zepeda-Peone was "choked and then thrown down between bed and wall." Ms. Zepeda-Peone stated alcohol fueled the domestic violence and that "he beat my ass (laughs) and I took it like a champ. I loved that asshole, I still do."

After Raymond's death, she had difficulty dealing with her grief. She resorted to self-medication. She began using methamphetamine, a substance she had not abuse for several years, to help her deal with this tremendous sense of loss. Dr. Jeffrey Schloemer, who conducted a psychological evaluation of Ms. Zepeda-Peone, writes "[u]nquestionable, she has experienced trauma and associated residual systems of this condition, primarily intrusive unwanted thoughts and memories."

Ms. Zepeda-Peone began feeling her husband's presence – at times frightening, at times reassuring. She was feeling his disturbing presence at the time of the fire.

### 3. Ms. Zepeda-Peone's mental stability deteriorated after the death of her husband and at the time of the fire, she was exhibiting symptoms of a psychic disorder.

Prior to 2017, there are no documented concerns of delusional thinking, hallucinations or psychotic-related behavior documented in her medical records. Dr. Schloemer writes, after his death, Ms. Zepeda Peone began exhibiting delusional thoughts. This was most likely brought on by trauma in conjunction with methamphetamine use.

On the day of the fire, she felt Raymond's disturbing presence in the house. She felt there was someone hiding in her house. She heard slamming doors and tapping noises. She feared someone was intending to harm her youngest daughter (who did not live at nor was present in the home). She decided to start the fire to "smoke out" whoever was hiding there, to have Raymond leave. She believed the house would either be completely reduced to a "hole in the ground" or would sustain minimal damage due to past water damage. According to the psychological report, on the day of the fire, she was in a delusional persecutory complex but knew what she was doing. On the day of the fire she was experiencing "symptoms of a psychotic disorder including positive symptoms such as incongruent and inappropriate affect, durable delusional thinking, hallucinations, disorganized behavior and thought process."

### B. A sentence of 18 months is sufficient but not greater than necessary to meet the sentencing factors within 18 U.S.C. §3553(a).

#### 1. She has served nearly a year in harsh conditions

Ms. Zepeda-Peone has already experienced the trauma of incarceration, serving a pretrial sentence in the harshest conditions during a scary time – her first real jail sentence.

Time in a county jail during COVID is harder time. Since COVID, she has been on lockdown 23 hours per day during the week, and 24 hours per day during the weekend. She has lived through horrid conditions.

Harsh pretrial conditions have served as a basis for a variance. *See, e.g., U.S. v. Pressley,* 345 F.3d 1205 (11th Cir. 2003)(remanded to district court and confirming that the court may impose its proposed departure of 24 months based on the significant time the defendant spend in pretrial confinement, primarily on 23-hour per day lockdown); *see also U.S. v. Ortiz,* 2007 WL 4208802 (D.N.J. Nov. 27, 2007)(explaining variance for multiple defendants based on pretrial confinement at county jail).

Ms. Zepeda-Peone has served a harsh sentence.

### 2. She will get the treatment she needs while on supervised release.

Ms. Zepeda-Peone seeks treatment at People's Place, a six to twelve month in-patient, culturally sensitive treatment facility that has 24/7 supervision. The facility treats trauma caused by years of abuse, mental health issues and substance abuse issues. She was previously accepted into this program and it is believed, upon completion of her term of incarceration, she will be accepted back into the program.

According to Dr. Schloemer, "[r]esearch suggests that individuals with similar substance induced psychotic disorders can respond well to substance use treatment programs." Ms. Zepeda-Peone has experienced multiple traumas and losses in her life which appear to complicate emotional coping, worsened and stunted by substance use. Dr. Schloemer concludes that she would benefit from trauma and grief-based, culturally sensitive, supportive psychotherapy.

People's Place provides this supportive psychotherapy.

### Conclusion

A sentence of 18 months, followed by a five-year term of supervised release, is sufficient but not greater than necessary to meet the sentencing factors within 18 U.S.C. §3553(a).

Dated: March 18, 2021

Federal Defenders of Eastern Washington & Idaho

*s/Andrea K. George*

Andrea K. George, MN 202125
10 North Post Street, Suite 700
Spokane, Washington 99201
t: (509) 624-7606
f: (509) 747-3539
Andrea_George@fd.org

## Service Certificate

I certify that on March 18, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will notify Assistant United States Attorneys: Richard Barker.

*s/Andrea K. George*

Andrea K. George, MN 202125
10 North Post Street, Suite 700
Spokane, Washington 99201
t: (509) 624-7606
f: (509) 747-3539
Andrea_George@fd.org